## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNETH JOHNSON**                                    **CIVIL ACTION**

**VERSUS**                                             **NO. 20-2703**

**CRAIG WEBRE, et al.**                                **SECTION: "G"**

## ORDER AND REASONS

This litigation arises from an alleged controversy over the residence of Lafourche Parish School Board member and Defendant Richmond Boyd ("Boyd").[1] Plaintiff Kenneth Johnson ("Plaintiff") brings claims against Defendants Lafourche Parish District Attorney Kristine Russell ("Russell"), Lafourche Parish Sheriff Craig Webre ("Webre"), Lafourche Parish School Board member Richmond Boyd ("Boyd"), Boyd's wife and Lafourche Parish Librarian Kaina Boyd ("Mrs. Boyd"), Lafourche Parish Detective Nicholas Pepper ("Pepper"), Lafourche Parish Assistant District Attorney Allie Fournet ("Fournet"), and Judge Christopher Boudreaux of the Seventeenth Judicial District Court for the Parish of Lafourche ("Judge Boudreaux") (collectively, "Defendants").[2] Before the Court is Russell and Fournet's (collectively, "Movants") "Third Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) & Alternatively, for a More Definite Statement Pursuant to F.R.C.P. 12(e)."[3] Plaintiff opposes the

---

[1] *See* Rec. Doc. 50.

[2] *Id.*

[3] Rec. Doc. 60.

1

motion.[4] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion and dismisses Plaintiff's federal claims against Movants without prejudice. The Court also declines to exercise supplemental jurisdiction over any remaining state law claims.

## I. Background

### A.    *Factual Background/State Court Proceedings*

In the Second Amended Complaint, Plaintiff alleges that Boyd lives in Raceland, not in the district of Thibodaux where he is elected to the School Board.[5] Plaintiff further alleges that Boyd's "influence as an elected school board member and bail bondsman" allowed him to influence Defendants Webre, Pepper, Russell, Fournet, and Judge Boudreaux into "silencing" Plaintiff's free speech.[6] Specifically, Plaintiff alleges that Boyd and Mrs. Boyd obtained permanent protective orders (the "Protective Orders") in the Seventeenth Judicial District Court for the Parish of Lafourche, prohibiting Plaintiff from abusing, harassing, or stalking Boyd and Mrs. Boyd.[7] Plaintiff asserts that Boyd and Mrs. Boyd have had Plaintiff "arrested, incarcerated, or brought before a judge a total of twenty times" for violating the Protective Orders.[8] On April 18, 2018, Judge Boudreaux denied as untimely motions Plaintiff filed in state court to amend the Protective Orders and for a new trial.[9]

---

[4] Rec. Doc. 115.

[5] *Id.* at 1.

[6] *Id.*

[7] *Id.* at 9. *See also* Rec. Docs. 50-1, 50-3 at 21.

[8] Rec. Doc. 50 at 9.

[9] Rec. Doc. 50-10 at 18–19.

On May 31, 2019, Plaintiff filed a petition in the same state court for a temporary restraining order against Boyd, alleging that Boyd threatened Plaintiff and had him arrested for violating the Protective Orders where Plaintiff attended church service and did not know Boyd would also be attending.[10] Plaintiff alleges this petition was denied[11] and that his most recent arrests for violation of the Protective Orders occurred on March 17, 2020, and July 23, 2020.[12] On February 2, 2021, Plaintiff filed a motion to dissolve the Protective Orders in state court.[13] However, on February 5, 2021, during a hearing to determine whether Plaintiff was in contempt of court for violating the Protective Orders, Judge Boudreaux denied the motion to dissolve, concluding that it was actually an untimely appeal.[14]

Judge Boudreaux also found Plaintiff in contempt of court for violating the Protective Orders and entered a contempt judgment (the "Contempt Judgment") on February 22, 2021.[15] Plaintiff alleges that he "filed a timely Notice of Appeal [of the Contempt Judgment] and requested a Return Date for the appeal, which was denied."[16] On March 2, 2021, Plaintiff petitioned for a writ of mandamus[17] and alleges that, "as of now, the order has not been signed

---

[10] Rec. Doc. 50-4 at 1–5.

[11] Rec. Doc. 50 at 5.

[12] *Id.* at 10.

[13] Rec. Doc. 50-8 at 7.

[14] *See* Rec. Doc. 50-15 at 6 (determining that the motion was "nothing more than a rehash of the issues that were addressed in the original hearing on the protective order").

[15] Rec. Doc. 50-8 at 25–26.

[16] Rec. Doc. 50 at 11–12.

[17] Rec. Doc. 50-8 at 14–15.

by [Judge] Boudreaux and Plaintiff Johnson's time for appeal is set to expire."[18] On April 1, 2021, another judge in the Seventeenth Judicial District Court granted Plaintiff's motion to recuse Judge Boudreaux from future proceedings in the state court matter.[19]

**B.     Procedural Background/Federal Court Proceedings**

On October 2, 2020, Plaintiff filed a Complaint in this Court.[20] On January 19, 2021, Plaintiff filed an Amended Complaint.[21] On April 2, 2021, Plaintiff filed a Second Amended Complaint against Defendants, seeking declaratory and injunctive relief and monetary damages.[22]

Plaintiff asserts two claims against Movants. First, Plaintiff claims Movants violated Plaintiff's rights to freedom of speech, expression, and protest by "unlawfully arresting individuals engaged in free speech and protest . . ., implement[ing] customs, practices, and/or policies through which individuals are detained . . . for exercising their free speech," and encouraging, authorizing, directing, condoning, and ratifying unconstitutional and unlawful conduct.[23] Second, Plaintiff claims that Movants violated Plaintiff's rights to freedom of speech and due process by enforcing "a contradictory and confusing protective order . . . that were unclear, gave plaintiff no opportunity to present evidence, and gave law enforcement instructions to arrest plaintiff solely on the word of [Boyd]."[24]

---

[18] Rec. Doc. 50 at 12.

[19] Rec. Doc. 50-16 at 1.

[20] Rec. Doc. 2. The Complaint also named the State of Louisiana, the Lafourche Parish Sheriff's Office, and the Lafourche Parish School Board. These parties were not named in the subsequent pleadings.

[21] Rec. Doc. 31.

[22] Rec. Doc. 50 at 19–20.

[23] *Id.* at 13–15.

[24] *Id.* at 16.

On May 5, 2021, Movants filed the instant motion to dismiss.[25] On May 28, 2021, Plaintiff filed an unopposed motion to stay because Plaintiff's counsel was suspended by the Louisiana Supreme Court.[26] This Court granted Plaintiff's motion and stayed the case to provide time for Plaintiff's counsel to be reinstated to the practice of law.[27]

On June 7, 2022, the Court conducted a status conference[28] and lifted the stay.[29] During the status conference, the Court informed the parties that the instant motion would be noticed for submission on July 13, 2022.[30] Plaintiff was told to "file any opposition in accordance with the Local Rules."[31] Pursuant to Local Rule 7.5, any opposition to a motion must be filed eight days before the noticed submission date.[32] Therefore, Plaintiff's opposition to the instant motion was due on July 5, 2022. On July 15, 2022, the Court granted Plaintiff an extension until July 20, 2022, to file the opposition.[33] Plaintiff filed his opposition to the instant motion on July 20, 2022.[34]

## II. Parties' Arguments

### A.    *Movants' Arguments in Support of the Motion to Dismiss*

---

[25] Rec. Doc. 60.

[26] Rec. Docs. 75, 75-1.

[27] Rec. Doc. 81.

[28] Rec. Doc. 103.

[29] Rec. Doc. 102.

[30] *Id.* at 1–2.

[31] *Id.* at 2.

[32] EDLA Local Rule 7.5.

[33] Rec. Doc. 111.

[34] Rec. Doc. 115.

Movants make six arguments in support of their motion. First, Movants argue that the Court lacks subject matter jurisdiction because the claims "are an attempt by the Plaintiff to side-step unfavorable judgments against the Plaintiff in parallel state court proceedings where [Boyd and Mrs. Boyd] were successful in obtaining [the Protective Orders]."[35] Movants aver that Plaintiff's attempt to prevent enforcement of the Protective Orders is "in contravention of the *Rooker-Feldman* doctrine" because Plaintiff could have sought "reversal or modification in an appropriate and timely-filed state court appellate proceeding."[36] Furthermore, Movants aver that the *Younger* abstention doctrine applies to Plaintiff's claims based on the Contempt Judgment because "the state has an important interest in regulating claims of contempt and civil disobedience of orders issued by the state court, and [Plaintiff] has been provided an adequate opportunity in the state proceedings to raise constitutional and appellate challenges."[37]

Second, Movants argue Plaintiff fails to state official capacity claims against them because the Second Amended Complaint "does not identify any purported unconstitutional official policy of [the Lafourche Parish District Attorney's Office]."[38] Furthermore, Movants assert that Plaintiff fails to "point to any other instances where [the Lafourche Parish District Attorney's Office] . . . committed persistent, repeated, or otherwise engaged in similar unconstitutional behavior, which is required to show that an unconstitutional custom exists."[39] Therefore, Movants conclude that Plaintiff's allegations are insufficient to state a claim against

---

[35] Rec. Doc 60-1 at 6.

[36] *Id*. at 9.

[37] *Id*. at 11.

[38] *Id*. at 14.

[39] *Id*. at 15.

them in their official capacities.[40]

Third, Movants argue that Plaintiff has failed to state individual capacity claims against them because, as prosecutors, they enjoy absolute immunity "with respect to activities that are intimately associated with the judicial phase of the criminal process,"[41] and qualified immunity "for acts performed in the course of administrative duties and investigatory functions."[42] Movants aver that Plaintiff "does not allege that Russell was personally involved" and only alleges that Fournet "was the prosecutor during one of [P]laintiff's criminal trial[s]."[43] Thus, Movants conclude that they are entitled to absolute immunity in their individual capacities.[44]

Fourth, Movants argue that Plaintiff's only specific allegation made against them is prescribed on the face of the complaint.[45] Movants aver that "Plaintiff named Fournet as a Defendant . . . simply because she was the prosecutor at his criminal trial which he alleges occurred on August 6, 2018. However, the Plaintiff did not file his original complaint until October 2, 2020."[46] Therefore, Movants conclude that Plaintiff's claims against them are prescribed because "Plaintiff makes no allegations that either Russell or Fournet made any specific action or inaction which would give rise to any of his purported claims during the one-year period proceeding the filing of the original complaint."[47]

---

[40] *Id.*

[41] *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 631-32 (5th Cir. 2003)).

[42] *Id.* at 16 (citing *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016)).

[43] *Id.* at 18.

[44] *Id.*

[45] *See id.*

[46] *Id.* at 19 (citations omitted).

[47] *Id.*

Fifth, Movants argue that any claim of false arrest and imprisonment and malicious prosecution would fail as a matter of law even though no such claim is made against them.[48] Movants assert that Plaintiff fails to make such claims because Plaintiff has failed to show that there was a bona fide termination in his favor in the underlying proceedings.[49]

Sixth, Movants argue that alternatively, the Court should grant their motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[50] Movants assert that the motion should be granted because Plaintiff makes "imprecise, conclusionary recitations of the law [that] do not provide any of the Defendants with the proper notice of claims needed to prepare their defenses or understand the claims levied against them."[51]

**B.    *Plaintiff's Arguments in Opposition to the Motion to Dismiss***

Plaintiff makes six arguments in opposition to Movants' motion.[52] First, Plaintiff argues that the Second Amended Complaint states a claim under *Monell v. Dep't. of Soc. Servs. of City of New York*[53] by showing "the existence of a policy within the Department that caused damages to Plaintiff."[54] Plaintiff avers that "inadequacy of training can serve as the basis for liability when the failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"[55] Plaintiff concludes that, "[i]n this case, where the police department

---

[48] *Id*. at 20.

[49] *Id*.

[50] *Id*. at 24.

[51] *Id*.

[52] *See* Rec. Doc. 115.

[53] 436 U.S. 658 (1978).

[54] Rec. Doc. 115 at 4.

[55] *Id*. (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

has blatantly violated Plaintiff's constitutional rights, such an analogy would be proper."[56]

Second, Plaintiff argues that whether there has been a bona fide termination of the underlying proceedings in Plaintiff's favor sufficient to state a claim for malicious prosecution "is a question for the Court to decide based on the circumstances of each case."[57] Thus, Plaintiff concludes that "[t]he Court should not dismiss a claim without hearing it on its merits."[58] Furthermore, Plaintiff contends that "there is no bona fide termination requirement in the state of Louisiana for false imprisonment, thus Defendant's motion should necessarily fail."[59]

Third, Plaintiff argues that the *Younger* abstention doctrine does not apply to this matter because "there is no ongoing state judicial proceedings. Nor is the second and third factors [of the *Younger* abstention doctrine] met, as the proceedings do not implicate important state interests and the proceedings do raise Constitutional challenges."[60] Plaintiff avers that Movants state "very vaguely" that important state interests are implicated without identifying those interests.[61] Plaintiff also asserts that Plaintiff's other opportunities to raise Constitutional issue are irrelevant to the analysis.[62]

Fourth, Plaintiff argues that the *Rooker-Feldman* doctrine does not apply to this matter because, although the Protective Orders were final state-court judgments, they were "only part of the complaint, which also focuses heavily on issues of harassment, stalking, and Fourteenth

---

[56] *Id.*

[57] *Id.* at 5.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 8.

[61] *Id.*

[62] *Id.*

Amendment violations that [a]rose out of the order."[63] Plaintiff avers that, therefore, because the Second Amended Complaint "is not an appeal of the [Protective Orders] . . . the *Rooker-Feldman* doctrine is irrelevant."[64]

Fifth, Plaintiff argues that Movants are not entitled to immunity because the Second Amended Complaint states violations of clearly established constitutional rights by alleging harassment, false imprisonment, and defamation of character.[65] Plaintiff also avers that Movants' assertion that it is unquestionable that their conduct was reasonable "is a tautological argument, as the question of whether [Movants] acted reasonably is one of the issues that Plaintiff has raised in the complaint."[66]

Sixth, Plaintiff argues that the Second Amended Complaint has stated a claim which entitles him to relief by clearly stating allegations of harm caused through his wrongful arrest, and retaliation through arrests and vague protective orders based on Plaintiff's protected speech.[67] Therefore, Plaintiff concludes that Movants' motion should be denied.[68]

### III. Legal Standards

*A.*   ***Legal Standard for a Rule 12(b)(1) Motion to Dismiss***

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."[69] It is a "first principle of jurisdiction" that a federal court

---

[63] *Id.* at 9.

[64] *Id.* at 10.

[65] *Id.*

[66] *Id.*

[67] *See id.* at 11–12.

[68] *Id.* at 12.

[69] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

must dismiss an action "whenever it appears that subject matter jurisdiction is lacking."[70] Accordingly, a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" it.[71] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[72] This practice "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[73] When opposing a 12(b)(1) motion, as at all other times, the party asserting jurisdiction bears the burden to prove that the Court has jurisdiction.[74]

**B.      Legal Standard for a Rule 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[75] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[76] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[77] "Factual allegations must be enough to raise a right to relief above the

---

[70] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citations omitted).

[71] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citations omitted).

[72] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

[73] *In re FEMA Trailer*, 668 F.3d at 287.

[74] *Ramming*, 281 F.3d at 161.

[75] Fed. R. Civ. P. 12(b)(6).

[76] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[77] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

speculative level."[78] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[79]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[80] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[81] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[82] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[83]

The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[84] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[85] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted

---

[78] *Twombly*, 550 U.S. at 556.

[79] *Id.* at 570.

[80] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[81] *Iqbal*, 556 U.S. at 677–78.

[82] *Id.* at 679.

[83] *Id.* at 678.

[84] *Id.*

[85] *Id.*

claims.[86] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[87]

## IV. Analysis

Movants first argue that this Court lacks subject matter jurisdiction over Plaintiff's claims because: (1) the *Younger* abstention doctrine bars Plaintiff's claims as an attempt to relitigate ongoing state proceedings; and (2) the *Rooker-Feldman* doctrine bars Plaintiff's claims as an attempt to appeal the Protective Orders. Movants also argue that Plaintiff fails to state a claim because Movants' claims are prescribed, Movants are entitled to immunity, and Plaintiff fails to state *Monell*, First Amendment free speech, false imprisonment, and malicious prosecution claims against them. As required by the Fifth Circuit, the Court addresses the jurisdictional issues first[88] and finds that it lacks subject matter jurisdiction over Plaintiff's claims against Movants in this matter.

### A.   *Plaintiff's Claims Should be Dismissed Under the Rooker-Feldman Doctrine*

Movants argue that Plaintiff's claims should be dismissed pursuant to the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction to review or modify the final decisions of state courts unless there is a federal statute that specifically permits such a review.[89] In *Rooker v. Fidelity Trust Co.*, the plaintiff filed suit in

---

[86] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[87] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[88] *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (citations omitted).

[89] *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004).

federal district court, claiming that the state court, in a case in which the plaintiff was a party, had given effect to a state statute alleged to be in conflict with the contract clause of the Constitution and the due process and equal protection clauses of the Fourteenth Amendment.[90] The Supreme Court held that "[i]f the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction."[91] The Supreme Court explained that the district court lacked jurisdiction because "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment for errors of that character."[92]

In *District of Columbia Court of Appeals v. Feldman*, two plaintiffs brought suit in federal court challenging the District of Columbia Court of Appeals' refusal to waive a court rule requiring District of Columbia bar applicants to have graduated from an accredited law school.[93] The Supreme Court held that the proceedings before the District of Columbia Court of Appeals were judicial in nature and the district court lacked subject matter jurisdiction over their claims.[94] The Supreme Court found that district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional."[95]

The Supreme Court has cautioned that the *Rooker-Feldman* doctrine is "confined to cases

---

[90] *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414–15 (1923).

[91] *Id.* at 415.

[92] *Id.* at 416.

[93] 460 U.S. 462, 464–65 (1983).

[94] *Id.* at 482.

[95] *Id.* at 486.

of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[96] "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."[97]

In *Truong v. Bank of America, N.A.*, the Fifth Circuit explained that the two hallmarks of the *Rooker-Feldman* inquiry are: (1) "what the federal court is being asked to review and reject;" and (2) "the source of the federal plaintiff's alleged injury."[98] Recently, in *Miller v. Dunn*, the Fifth Circuit clarified that "*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed."[99]

In the Second Amended Complaint, Plaintiff brings federal and state law claims against Movants and seeks declaratory and injunctive relief and damages from the Protective Orders.[100] Specifically, Plaintiff asks this Court to enjoin Movants from enforcing the Protective Orders and to declare that the Protective Orders are too restrictive on Plaintiff's rights to free speech, overly vague, and constitutionally infirm.[101] Finally, Plaintiff asks the Court award damages "according to proof."[102]

---

[96] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

[97] *Id.*

[98] 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

[99] 35 F.4th 1007, 112 (5th Cir. 2022).

[100] *See* Rec. Doc. 50 at 19–20.

[101] *Id.* at 20.

[102] *Id.*

As a threshold matter, the *Rooker-Feldman* doctrine only applies to claims based on state court judgments rendered before the district court proceedings commenced.[103] The Protective Orders were issued on February 6, 2018, and Plaintiff filed this lawsuit on October 2, 2020.[104] Therefore, undoubtedly, Plaintiff's claims based on the Protective Orders are claims against state court judgments rendered before the district court proceedings commenced.

Thus, since Plaintiffs claims against Movants refer to state-court judgments rendered before the instant federal proceeding commenced, the Court must conduct an analysis as to whether the *Rooker-Feldman* doctrine bars those claims. First, the Court will consider whether *Rooker-Feldman* bars consideration of Plaintiff's claims against Movants to the extent that he explicitly seeks declaratory and injunctive relief from a state court judgment. Then, the Court will consider whether, construing Plaintiff's Complaint liberally, those claims, for which he also seeks damages, constitute independent claims beyond the scope of *Rooker-Feldman*.

1. **The Court is Barred from Considering Plaintiff's Claims against Movants for which he Claims Injunctive Relief and Damages Pursuant to the *Rooker-Feldman* Doctrine**

"The Supreme Court has definitively established, in what has become known as the *Rooker-Feldman* doctrine, that federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify *final* orders of state courts."[105] If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a

---

[103] *Exxon Mobil Corp.*, 544 U.S. at 284.

[104] Rec. Doc. 2.

[105] *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (emphasis added) (internal quotation marks and citation omitted).

writ of certiorari to the United States Supreme Court."[106]

In the Second Amended Complaint, Plaintiff appears to seek declaratory and injunctive relief from the Protective Orders. The Protective Orders, as permanent injunctions, are undoubtedly final judgments under Louisiana law. Under Louisiana law, "[a] permanent injunction is a final judgment which extends the life of the proceeding in which it was granted until it is either modified or revoked by the district court which issued it."[107] Plaintiff concedes that the Protective Orders are final judgments of the state court.[108] The finality of the Protective Orders is further evidenced by both the fact that the state court held Plaintiff in contempt for violating those orders and that Judge Boudreaux denied Plaintiff's motion to dissolve the Protective Orders as an untimely appeal.[109] Plaintiff does not suggest that an appeal of the Protective Orders is pending. Thus, to the extent that Plaintiff seeks declaratory and injunctive relief from the Protective Orders, the Court is barred from hearing such claims pursuant to the *Rooker-Feldman* doctrine.[110]

### 2. Plaintiff's Claims against Movants for which he Seeks Damages are not Independent Claims beyond the Scope of *Rooker-Feldman*

In addition to seeking declaratory and injunctive relief, Plaintiff also seeks monetary damages. Accordingly, construing the Second Amended Complaint liberally, the Court will consider whether Plaintiff's claims constitute independent claims beyond the scope of *Rooker-*

---

[106] *Id.*

[107] *S. Cent. Bell Tel. Co. v. Dempster*, 303 So. 2d 278, 279 (La. Ct. App. 1973).

[108] Rec. Doc. 115 at 9.

[109] Rec. Doc. 50-8 at 25–26; Rec. Doc. 50-15 at 6.

[110] *See Exxon Mobil Corp.*, 544 U.S. at 284 (holding that application of the *Rooker-Feldman* doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

*Feldman*.

The Fifth Circuit in *Truong v. Bank of America, N.A.* cautioned that in light of the "narrow ground" *Rooker-Feldman* occupies, "it does not prohibit a plaintiff from 'present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'"[111] As discussed above, the Fifth Circuit explained that the two hallmarks of the *Rooker-Feldman* inquiry are: (1) "what the federal court is being asked to review and reject;" and (2) "the source of the federal plaintiff's alleged injury."[112]

However, in *Truong*, the Fifth Circuit also made a point to note that there is no "general rule that *any* claim that relies on a fraud allegation is an 'independent claim' for *Rooker-Feldman* purposes."[113] The Fifth Circuit cited a number of cases in which it had held that *Rooker-Feldman* barred claims that judgments were fraudulently procured because the relief requested would necessarily include reversing a state court judgment.[114] *Truong* approvingly cited *Turner v. Chase*,[115] *Turner v. Cade*[116] and *Sookma v. Millard*,[117] all unpublished decisions in which the Fifth Circuit held that the *Rooker-Feldman* doctrine barred claims that state court divorce decrees were procured through fraud because the federal plaintiffs had sought to void the adverse state

---

[111] *Truong*, 717 F.3d at 385 (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

[112] *Id.* at 382 (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

[113] *Id.* at 384 n.3.

[114] *Id.* (citing *Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011); *United States v. Shepherd*, 23 F.3d 923, 924–25 (5th Cir. 1994).

[115] 334 F. App'x 657, 659–60 (5th Cir. 2009).

[116] 354 F. App'x 108, 110–11 (5th Cir. 2009).

[117] 151 F. App'x 299, 300–01 (5th Cir. 2005).

court judgments.[118] In fact, *Sookma* involved a similar claim that the plaintiff's state court opponents and state judges together deprived her of her civil rights.[119] There, the Fifth Circuit found that the *Rooker-Feldman* doctrine barred review because the plaintiff sought, in addition to damages, to enjoin the enforcement of a state divorce decree.[120] By contrast, in the Fifth Circuit cases cited in *Truong* for the proposition that a district court may have jurisdiction over "independent claims" that do not seek to merely overturn the state court judgment, the plaintiffs, unlike Plaintiff in the instant litigation, did not bring a direct attack on the judgment of a state court.[121]

Here, the Second Amended Complaint explicitly seeks declaratory and injunctive relief from the state court judgments and damages.[122] Plaintiff alleges that Movants harmed him by: denying "his rights to assemble, speak, and demonstrate in public forum such as social media platforms;" developing and implementing "customs, practices, and/or policies . . . [which] caused the violation of Plaintiffs' constitutional rights to speak freely;" failing "to train police officers about the constitutional rights of individuals to speak freely;" depriving him an "opportunity to present evidence;" and not allowing him "a reasonable opportunity to understand what conduct

---

[118] *See Truong*, 717 F.3d at 384 n.3.

[119] *Sookma*, 151 F. App'x at 300–01.

[120] *Id.*

[121] *See, e.g., Drake v. St. Paul Travelers Ins. Co.*, 353 F. App'x 901, 905 (5th Cir. 2009) ("In his present complaint, [Plaintiff] is not inviting the district court to review and reject the judgment of the Texas state courts. Instead, [the plaintiff] is seeking damages for [a defendant's] allegedly fraudulent statements. Thus, *Rooker-Feldman* is inapplicable in this case."); *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) ("The *Rooker-Feldman* doctrine does not apply to this case because adjudicating [the plaintiff's] claims did not require the district court to review any final judgment rendered by a state court.").

[122] Rec. Doc. 50.

was criminal and what conduct was civil."[123]

These claims for damages stem directly from Movants' prosecution of alleged violations of the Protective Orders. The *Rooker-Feldman* doctrine bars claims for "monetary damages against government agencies that obtained the orders and continue to enforce them."[124] The Second Amended Complaint does not allege that Movants or their employees acted outside the scope of the Protective Orders, or acted unlawfully in any other way, when interacting with Plaintiff. Rather, it seems that Plaintiff avers that Movants are liable for obtaining and enforcing, and instituting policies and trainings to enforce, the Protective Orders.

This Court has previously found that such claims are "inextricably intertwined" with an underlying judgment even where Plaintiff "alleges a range of claims against the defendants not raised in the original proceedings."[125] Likewise, Plaintiff's claims here implicate the underlying state court judgment such that Plaintiff's claims ultimately constitute a collateral attack on the state court decree. Plaintiff even acknowledges that the Second Amended Complaint "involves harassment, stalking, and Fourteenth Amendment violations that *[a]rose out of* the [Protective Orders]."[126] Accordingly, the Court finds that all of Plaintiff's claims against Movants are barred by the *Rooker-Feldman* doctrine because they are 'inextricably intertwined' with the underlying Protective Orders. The Court could not rule in Plaintiff's favor without overturning the Protective

---

[123] *Id.* at 14–17.

[124] *Webb v. Oklahoma Dep't. of Human Servs.*, 516 F. App'x 727, 729 (10th Cir. 2013) (holding that Plaintiff's claims against a county district attorney's office were barred by the *Rooker-Feldman* doctrine because enforcement of a final order is inextricably intertwined with the order itself); *see also*

[125] *See Smith v. Woods*, 2020 WL 3606271, at *11 (E.D. La. July 2, 2020) (Brown, C.J.) (holding that the *Rooker-Feldman* doctrine applied where Plaintiff challenged a state divorce judgment in this Court and sought damages in addition to injunctive relief because "[t]he fact that Plaintiff seeks damages in addition to injunctive relief does not negate the fact that Plaintiff's claims ultimately constitute a collateral attack on the state court decree and that Plaintiff ultimately seeks to overturn or void a state court judgment"), *aff'd*, 853 F. App'x 980 (5th Cir. 2021).

[126] Rec. Doc. 115 at 9.

Orders.[127] Therefore, the Court finds that the Court lacks subject matter jurisdiction over Plaintiff's claims against Movants.[128] Thus, Plaintiff's federal claims against Movants must be dismissed without prejudice. The Court also declines to exercise supplemental jurisdiction over any remaining state law claims that Plaintiff appears to allege.[129]

## V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Movants' motion[130] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's federal claims against Movants in their official and individual capacities are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any remaining state law claims and any such claims are **DISMISSED WITHOUT PREJUDICE.**

**NEW ORLEANS, LOUISIANA**, this ___19th___ day of August, 2022.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[127] *Smith*, 2020 WL 3606271, at *11 (citing *Shepherd*, 23 F.3d at 924).

[128] The Court notes that it would dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to state any claim against Movants other than that they prosecuted Plaintiff's violation of the Protective Orders in accordance with Louisiana law. *See* Rec. Doc. 50 at 14–18; La. Rev. Stat. § 14:79(A)(1).

[129] Even construing the complaint liberally, it is not clear that Plaintiff asserts state law claims. To the extent that he does assert state law claims, a court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Here, the Court elects to follow the "general rule [] to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992).

[130] Rec. Doc. 60.