## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNETH JOHNSON**                                          **CIVIL ACTION**

**VERSUS**                                                          **NO. 20-2703**

**CRAIG WEBRE, et al.**                                       **SECTION: "G"**


## <u>ORDER AND REASONS</u>

This litigation arises from an alleged controversy over the residence of Lafourche Parish School Board member and Defendant Richmond Boyd ("Boyd").[1] Plaintiff Kenneth Johnson ("Plaintiff") brings claims against Defendants Lafourche Parish District Attorney Kristine Russell ("Russell"), Lafourche Parish Sheriff Craig Webre ("Webre"), Lafourche Parish School Board member Richmond Boyd ("Boyd"), Boyd's wife and Lafourche Parish Librarian Kaina Boyd ("Mrs. Boyd"), Lafourche Parish Detective Nicholas Pepper ("Pepper"), Lafourche Parish Assistant District Attorney Allie Fournet ("Fournet"), and Judge Christopher Boudreaux of the Seventeenth Judicial District Court for the Parish of Lafourche ("Judge Boudreaux") (collectively, "Defendants").[2] Before the Court is Boyd and Mrs. Boyd's (collectively, the "Boyds") "Third Motion to Dismiss under F.R.C.P 12(b)(1) and 12(b)(6), Alternatively Motion for More Definite Statement under F.R.C.P. 12(e)."[3] Plaintiff opposes the motion.[4] The Boyds

---

[1] *See* Rec. Doc. 50.

[2] *Id.*

[3] Rec. Doc. 62.

[4] Rec. Doc. 114.

1

reply in further support of the motion to dismiss.[5] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion and dismisses Plaintiff's federal claims against the Boyds without prejudice. The Court declines to exercise supplemental jurisdiction over any remaining state law claims.

## I. Background

### A.    *Factual Background/State Court Proceedings*

In the Second Amended Complaint, Plaintiff alleges that Boyd lives in Raceland, not in the district of Thibodaux where he is elected to the School Board.[6] Plaintiff further alleges that Boyd's "influence as an elected school board member and bail bondsman" allowed him to influence Defendants Webre, Pepper, Russell, Fournet, and Judge Boudreaux into "silencing" Plaintiff's free speech.[7] Specifically, Plaintiff alleges that the Boyds obtained permanent protective orders (the "Protective Orders") in the Seventeenth Judicial District Court for the Parish of Lafourche, prohibiting Plaintiff from abusing, harassing, or stalking the Boyds.[8] Plaintiff asserts that the Boyds have had Plaintiff "arrested, incarcerated, or brought before a judge a total of twenty times" for violating the Protective Orders.[9] On April 18, 2018, Judge Boudreaux denied as untimely motions Plaintiff filed in state court to amend the Protective Orders and for a new trial.[10]

---

[5] Rec. Doc. 118.

[6] *Id.* at 1.

[7] *Id.*

[8] *Id.* at 9. *See also* Rec. Docs. 50-1, 50-3 at 21.

[9] Rec. Doc. 50 at 9.

[10] Rec. Doc. 50-10 at 18–19.

On May 31, 2019, Plaintiff filed a petition in the same state court for a temporary restraining order against Boyd, alleging that Boyd threatened Plaintiff and had him arrested for violating the Protective Orders where Plaintiff attended church service and did not know Boyd would also be attending.[11] Plaintiff alleges this petition was denied[12] and that his most recent arrests for violation of the Protective Orders occurred on March 17, 2020, and July 23, 2020.[13] On February 2, 2021, Plaintiff filed a motion to dissolve the Protective Orders in state court.[14] However, on February 5, 2021, during a hearing to determine whether Plaintiff was in contempt of court for violating the Protective Orders, Judge Boudreaux denied the motion to dissolve, concluding that it was actually an untimely appeal.[15]

Judge Boudreaux also found Plaintiff in contempt of court for violating the Protective Orders and entered a contempt judgment (the "Contempt Judgment") on February 22, 2021.[16] Plaintiff alleges that he "filed a timely Notice of Appeal [of the Contempt Judgment] and requested a 'Return Date' for the appeal, which was denied."[17] On March 2, 2021, Plaintiff petitioned for a writ of mandamus[18] and alleges that, "as of now, the order has not been signed

---

[11] Rec. Doc. 50-4 at 1–5.

[12] Rec. Doc. 50 at 5.

[13] *Id.* at 10.

[14] Rec. Doc. 50-8 at 7.

[15] *See* Rec. Doc. 50-15 at 6 (determining that the motion was "nothing more than a rehash of the issues that were addressed in the original hearing on the protective order").

[16] Rec. Doc. 50-8 at 25–26.

[17] Rec. Doc. 50 at 11–12.

[18] Rec. Doc. 50-8 at 14–15.

by [Judge] Boudreaux and Plaintiff Johnson's time for appeal is set to expire."[19] On April 1, 2021, another judge in the Seventeenth Judicial District Court granted Plaintiff's motion to recuse Judge Boudreaux from future proceedings in the state court matter.[20]

### B.    Procedural Background/Federal Court Proceedings

On October 2, 2020, Plaintiff filed a Complaint in this Court.[21] On January 19, 2021, Plaintiff filed an Amended Complaint.[22] On April 2, 2021, Plaintiff filed a Second Amended Complaint against Defendants, seeking declaratory and injunctive relief and monetary damages.[23]

Plaintiff asserts three claims against the Boyds. First, Plaintiff claims that the Boyds violated Plaintiff's rights to freedom of speech, expression, and protest by "unlawfully arresting individuals engaged in free speech and protest . . ., implement[ing] customs, practices, and/or policies through which individuals are detained . . . for exercising their free speech," and encouraging, authorizing, directing, condoning, and ratifying unconstitutional and unlawful conduct.[24] Second, Plaintiff claims that the Boyds violated Plaintiff's rights to freedom of speech and due process by enforcing "a contradictory and confusing protective order[s]…that were

---

[19] Rec. Doc. 50 at 12.

[20] Rec. Doc. 50-16 at 1.

[21] Rec. Doc. 2. The Complaint also named the State of Louisiana, the Lafourche Parish Sheriff's Office, and the Lafourche Parish School Board. These parties were not named in the subsequent pleadings.

[22] Rec. Doc. 31.

[23] Rec. Doc. 50 at 19–20.

[24] Id. at 13–15. The Seconded Amended Complaint states that "Count I," which encompasses this claim, is "common to all Defendants." Id. at 13. The Court notes that Count I also states that "Defendants and their high-ranking policymaking officials have intentionally developed and implemented customs, practices, and/or policies according to which individuals are detained, harassed, threatened, dispersed, and charged for exercising their free speech." Id. at 14–15. The Court finds that this claim cannot reasonably be construed as one against Boyd and Mrs. Boyd, who cannot be said to develop and implement relevant customs, practices, and/or policies of the Lafourche Parish Sheriff's Department or District Attorney's Office in their individual capacities or as a Lafourche Parish School Board member and a librarian of the Lafourche Parish Public Library respectively.

unclear, gave plaintiff no opportunity to present evidence, and gave law enforcement instructions to arrest plaintiff solely on the word of [Boyd]."[25] Third, Plaintiff claims that the Boyds subjected Plaintiff to false arrest and imprisonment under the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983 by continuing "to phone law enforcement and utilize their influence to have Plaintiff Johnson arrested."[26]

On May 7, 2021, the Boyds filed the instant motion to dismiss.[27] On May 28, 2021, Plaintiff filed an unopposed motion to stay because Plaintiff's counsel was suspended by the Louisiana Supreme Court.[28] This Court granted Plaintiff's motion and stayed the case to provide time for Plaintiff's counsel to be reinstated to the practice of law.[29]

On June 7, 2022, the Court conducted a status conference[30] and lifted the stay.[31] During the status conference, the Court informed the parties that the instant motion would be noticed for submission on July 13, 2022.[32] Plaintiff was told to "file any opposition in accordance with the Local Rules."[33] Pursuant to Local Rule 7.5, any opposition to a motion must be filed eight days before the noticed submission date.[34] Therefore, Plaintiff's opposition to the instant motion was

---

[25] *Id.* at 16.

[26] *Id.* at 17–18.

[27] Rec. Doc. 62.

[28] Rec. Docs. 75, 75-1.

[29] Rec. Doc. 81.

[30] Rec. Doc. 103.

[31] Rec. Doc. 102.

[32] *Id*. at 1–2.

[33] *Id*. at 2.

[34] EDLA Local Rule 7.5.

due on July 5, 2022. On July 15, 2022, the Court granted Plaintiff an extension until July 20, 2022, to file the opposition.[35] Plaintiff filed his opposition to the instant motion on July 20, 2022.[36] With leave of this Court, the Boyds replied to Plaintiff's opposition on July 27. 2022.[37]

## II. Parties' Arguments

### A.   The Boyds' Arguments in Support of the Motion to Dismiss

The Boyds first argue that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[38] The Boyds make two arguments as to why this Court lacks subject matter jurisdiction over Plaintiff's claims against them. First, the Boyds argue that Plaintiff's claims can "only be properly brought against state actors" because Fourteenth Amendment claims apply only to government entities.[39] The Boyds argue that, although Plaintiff "attempts to pin federal claims to [the Boyds] by alleging actions 'under color of state law'" in the Boyds' official capacities, they acted as private citizens when enforcing the Protective Orders.[40] Therefore, the Boyds argue that, because there is no primary federal claim against the Boyds in this case, the Court should exercise its discretion and deny supplemental jurisdiction under 28 U.S.C. § 1367(a).[41] The Boyds aver that the Court should decline to exercise supplemental jurisdiction because doing so would be "to join an entirely different defendant on

---

[35] Rec. Doc. 111.

[36] Rec. Doc. 114.

[37] Rec. Doc. 118.

[38] Rec. Doc. 62-1 at 6.

[39] *Id*. (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38 (1982)).

[40] *Id.* at 7.

[41] *Id.* at 8.

the bases of a state-law claim over which  there is no independent basis of federal jurisdiction."[42]

Second, the Boyds argue that Plaintiff's claims should be dismissed pursuant to the *Younger* abstention doctrine. The Boyds argue that Plaintiff is trying to relitigate the merits of the Protective Orders even though they "have become final judgments of the state court."[43] The Boyds aver that Plaintiff is trying to "circumvent or even revive the appellate process by requesting that this Court intervene in the state court's ruling."[44] The Boyds also assert that, "each time [Plaintiff] was arrested, he was entitled to an adjudication where he had the right to a hearing and to an appeal process if the state district court ruled adversely."[45] The Boyds argue that, regardless, they were not party to any criminal proceedings.[46] Thus, the Boyds conclude that the Court should decline jurisdiction under the *Younger* Abstention doctrine because the claims "concern substantially the same questions at issue in the pending civil suit in the 17th Judicial District Court."[47]

The Boyds also argue that dismissal of the matter is appropriate under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[48] The Boyds make four arguments as to why Plaintiff fails to state a claim against them. First, the Boyds argue again that Plaintiff does not have official capacity federal claims against them because they were acting as private citizens and because Plaintiff "fails to cite any custom or policy . . . behind the alleged constitutional

---

[42] *Id*. at 8–9 (citing *Aldinger v. Howard*, 513 F.2d 1257 (9th Cir. 1975), *aff'd*, 427 U.S. 1 (1976)).

[43] *Id*. at 11.

[44] *Id.*

[45] *Id*. at 12.

[46] *Id.*

[47] *Id.*

[48] *Id*. at 13.

violations."[49]

Second, the Boyds argue that any § 1983 claims against Boyd in his official capacity are prescribed because Boyd ceased acting in his official capacity as a Lafourche Parish School Board member over a year prior to Plaintiff commencing this action.[50] Furthermore, the Boyds argue that Boyd is not suable in his official capacity because he no longer holds the school board position.[51] Third, the Boyds argue that Plaintiff fails to state a First Amendment free speech claim because the Protective Orders prohibit stalking, which is not a protected behavior, and Plaintiff's attempt to argue otherwise is an attempt to relitigate a final ruling of the state court.[52] Fourth, the Boyds argue that Plaintiff fails to state a malicious prosecution claim against them because there has not been a bona fide termination of the underlying civil proceeding in favor of Plaintiff and they are not party to any criminal proceedings.[53]

Finally, the Boyds argue that any amendment to the petition would be futile and thus move for a more definite statement, pursuant to Federal Rule of Civil Procedure 12(e), because Plaintiff's complaint "provides little factual support of his conclusory allegations that his constitutional rights were violated.[54]

**B.     *Plaintiff's Arguments in Opposition to the Motion to Dismiss***

Plaintiff makes four arguments in opposition to the Boyds' motion.[55] First, Plaintiff argues

---

[49] *Id.* at 14.

[50] *Id.* at 14–15.

[51] *Id.* at 15.

[52] *See id.* at 16–17.

[53] *See id.* at 18–19.

[54] *See id.* at 19–21.

[55] *See* Rec. Doc. 114.

that this Court has pendent jurisdiction over Plaintiff's state tort claims against the Boyds because they arise "out of the same nucleus of operative facts as a claim that can be tried in the Court."[56] Plaintiff asserts that, because he has filed a § 1983 action, a federal claim, against Defendants, "any claims arising out of it has federal question jurisdiction" and so pendent jurisdiction applies to the state tort claims.[57] Plaintiff avers that *Aldinger v. Howard*[58] "has long since been overruled by . . . 28 U.S.C. § 1367" and that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."[59] Thus, Plaintiff concludes that the Boyds' arguments against subject matter jurisdiction should not be considered.[60]

Second, Plaintiff argues that he has stated claims against the Boyds in their official capacities under § 1983 because Plaintiff "has adequately stated allegations of harassment, false imprisonment, and defamation rising out of the times he was wrongfully arrested by Defendants."[61] Plaintiff avers that these constitutional violations are based on the Boyds' retaliation to Plaintiff's comments about Mr. Boyd, the Boyds' use of their official positions to harass Plaintiff, and the vague Protective Orders.[62]

Third, Plaintiff argues that Defendants "do not cite any authority to support the dismissal of [the First Amendment claims], only offering opinions that such claims will likely fail in trial."[63]

---

[56] *Id*. at 4.

[57] *Id*.

[58] 427 U.S. 1 (1976).

[59] Rec. Doc. 114 at 5–6.

[60] *Id*. at 6.

[61] *Id*.

[62] *Id*. at 7.

[63] *Id*.

Thus, Plaintiff avers that these claims should be tried on the facts, rather than dismissed without any legal basis.[64]

Fourth, Plaintiff argues that whether there was a bona fide termination of the underlying judicial proceeding in favor of Plaintiff sufficient to state a claim for malicious prosecution is "a question for the Court to decide based on the circumstances of each case."[65] Therefore, Plaintiff concludes that the Court should deny the Boyds' motion.[66]

### C.     The Boyds' Reply in Further Support of the Motion

In reply, the Boyds reiterate that Plaintiff's claims against Boyd are prescribed because Boyd is no long a school board member and because they refer to court proceedings that occurred prior to the prescriptive cutoff date.[67] Further, the Boyds argue that Plaintiff's claim that he was "investigating" Boyd's residence is "utter nonsense" given that Boyd had already left the school board.[68] Rather, the Boyds argue that Plaintiff is attempting to relitigate the state court civil cases and "should not be permitted to circumvent or even revive the appellate process by requesting that this Court intervene in the state court's ruling."[69]

### III. Legal Standards

### A.     Legal Standard for a Rule 12(b)(1) Motion to Dismiss

---

[64] *Id.*

[65] *Id.* at 8.

[66] *Id.* at 9.

[67] Rec. Doc. 118 at 2.

[68] *Id.* at 3.

[69] *Id.*

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."[70] It is a "first principle of jurisdiction" that a federal court must dismiss an action "whenever it appears that subject matter jurisdiction is lacking."[71] Accordingly, a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" it.[72] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[73] This practice "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[74] When opposing a 12(b)(1) motion, as at all other times, the party asserting jurisdiction bears the burden to prove that the Court has jurisdiction.[75]

## B.    *Legal Standard for a Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[76] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[77] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that

---

[70] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[71] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citations omitted).

[72] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citations omitted).

[73] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

[74] *In re FEMA Trailer*, 668 F.3d at 287.

[75] *Ramming*, 281 F.3d at 161.

[76] Fed. R. Civ. P. 12(b)(6).

[77] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

is plausible on its face.'"[78] "Factual allegations must be enough to raise a right to relief above the speculative level."[79] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[80]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[81] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[82] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[83] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[84]

The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[85] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[86] From the face of the complaint, there must be enough factual matter to raise a

---

[78] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[79] *Twombly*, 550 U.S. at 556.

[80] *Id.* at 570.

[81] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[82] *Iqbal*, 556 U.S. at 677–78.

[83] *Id.* at 679.

[84] *Id.* at 678.

[85] *Id.*

[86] *Id.*

reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[87] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[88]

## IV. Analysis

The Boyds first argue that this Court lacks subject matter jurisdiction over Plaintiff's claims because: (1) Fourteenth Amendment claims apply only to government entities and the Court should decline to exercise pendent jurisdiction over the claims against the Boyds; and (2) the *Younger* abstention doctrine bars Plaintiff's claims as an attempt to relitigate ongoing state proceedings. The Boyds also argue that Plaintiff's claims are prescribed and that Plaintiff fails to state First Amendment free speech and malicious prosecution claims against them. As required by the Fifth Circuit, the Court addresses the jurisdictional issues first[89] and finds that it lacks subject matter jurisdiction over Plaintiff's claims against the Boyds in this matter.

### A.    *Plaintiff's Claims Should be Dismissed Under the Rooker-Feldman Doctrine*

The Boyds argue that Plaintiff's claims should be dismissed pursuant to the *Younger* abstention doctrine. The Boyds correctly state the *Younger* abstention doctrine applies where a federal court would be required to intervene in *ongoing* state proceedings.[90] In the Second Amended Complaint, Plaintiff appears to claim declaratory and injunctive relief and damages

---

[87] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[88] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[89] *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (citations omitted).

[90] *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012).

from the Protective Orders. The Protective Orders, as permanent injunctions, are undoubtedly *final* judgments. Under Louisiana law, "[a] permanent injunction is a final judgment which extends the life of the proceeding in which it was granted until it is either modified or revoked by the district court which issued it."[91] The finality of the Protective Orders is further evidenced by both the fact that the state court held Plaintiff in contempt for violating those orders and that Judge Boudreaux denied Plaintiff's motion to dissolve the Protective Orders as an untimely appeal.[92] Plaintiff does not suggest that an appeal of the Protective Orders is pending and thus the proceedings are not still ongoing. Therefore, the *Younger* abstention doctrine does not apply to any of Plaintiff's claims that are based on the Protective Orders.

However, under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction to review or modify the *final* decisions of state courts unless there is a federal statute that specifically permits such a review.[93] Even though the Boyds did not specifically raise *Rooker-Feldman*, "federal courts are duty bound to examine the basis of subject matter jurisdiction sua sponte."[94] In *Rooker v. Fidelity Trust Co.*, the plaintiff filed suit in federal district court, claiming that the state court, in a case in which the plaintiff was a party, had given effect to a state statute alleged to be in conflict with the contract clause of the Constitution and the due process and equal protection clauses of the Fourteenth Amendment.[95] The Supreme Court held that "[i]f the constitutional questions stated in the bill actually arose in the cause, it was the province and duty

---

[91] *S. Cent. Bell Tel. Co. v. Dempster*, 303 So. 2d 278, 279 (La. Ct. App. 1973).

[92] Rec. Doc. 50-8 at 25–26; Rec. Doc. 50-15 at 6.

[93] *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004).

[94] *Id.* at 460 (dismissing claims under *Rooker-Feldman* where Defendant did not raise the doctrine until his reply brief on appeal).

[95] *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414–15 (1923).

of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction."[96] The Supreme Court explained that the district court lacked jurisdiction because "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment for errors of that character."[97]

In *District of Columbia Court of Appeals v. Feldman*, two plaintiffs brought suit in federal court challenging the District of Columbia Court of Appeals' refusal to waive a court rule requiring District of Columbia bar applicants to have graduated from an accredited law school.[98] The Supreme Court held that the proceedings before the District of Columbia Court of Appeals were judicial in nature and the district court lacked subject matter jurisdiction over their claims.[99] The Supreme Court found that district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional."[100]

The Supreme Court has cautioned that the *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[101] "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the

---

[96] *Id.* at 415.

[97] *Id.* at 416.

[98] 460 U.S. 462, 464–65 (1983).

[99] *Id.* at 482.

[100] *Id.* at 486.

[101] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."[102]

In *Truong v. Bank of America, N.A.*, the Fifth Circuit explained that the two hallmarks of the *Rooker-Feldman* inquiry are: (1) "what the federal court is being asked to review and reject;" and (2) "the source of the federal plaintiff's alleged injury."[103] Recently, in *Miller v. Dunn*, the Fifth Circuit clarified that "*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed."[104]

In the Second Amended Complaint, Plaintiff brings federal and state law claims against Defendants and seeks declaratory and injunctive relief and damages from the Protective Orders.[105] Specifically, Plaintiff asks this Court to enjoin Defendants from enforcing the Protective Orders and to declare that the Protective Orders are too restrictive on Plaintiff's rights to free speech, overly vague, and constitutionally infirm.[106] Finally, Plaintiff asks the Court to "award Plaintiff actual and punitive damages against . . . [the Boyds]."[107]

As a threshold matter, the *Rooker-Feldman* doctrine only applies to claims based on state court judgments rendered before the district court proceedings commenced.[108] The Protective Orders were issued on February 6, 2018, and Plaintiff filed this lawsuit on October 2, 2020.[109]

---

[102] *Id.*

[103] 717 F.3d 377, 382 (5th Cir. 2013) (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

[104] 35 F.4th 1007, 112 (5th Cir. 2022).

[105] *See* Rec. Doc. 50 at 19–20.

[106] *Id.* at 20.

[107] *Id.*

[108] *Exxon Mobil Corp.*, 544 U.S. at 284.

[109] Rec. Doc. 2.

Therefore, undoubtedly, Plaintiff's claims based on the Protective Orders are claims against state court judgments rendered before the district court proceedings commenced.

Thus, since Plaintiffs claims against Defendants refer to state-court judgments rendered before the instant federal proceeding commenced, the Court must conduct an analysis as to whether the *Rooker-Feldman* doctrine bars those claims. First, the Court will consider whether *Rooker-Feldman* bars consideration of Plaintiff's claims against Defendants to the extent that he explicitly seeks declaratory and injunctive relief from a state court judgment. Then, the Court will consider whether, construing Plaintiff's Complaint liberally, those claims, for which he also seeks damages, constitute independent claims beyond the scope of *Rooker-Feldman*.

> **1.    The Court is Barred from Considering Plaintiff's Claims against Defendants for which he Claims Injunctive Relief and Damages Pursuant to the *Rooker-Feldman* Doctrine**

"The Supreme Court has definitively established, in what has become known as the *Rooker-Feldman* doctrine, that federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify *final* orders of state courts."[110] If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court."[111]

In the Second Amended Complaint, Plaintiff appears to seek declaratory and injunctive relief from the Protective Orders, which are final judgments under Louisiana law. The Protective Orders, as permanent injunctions, are undoubtedly final judgments under Louisiana law.[112] Thus,

---

[110] *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (emphasis added) (internal quotation marks and citation omitted).

[111] *Id.*

[112] *S. Cent. Bell Tel. Co.*, 303 So. 2d at 279.

to the extent that Plaintiff seeks declaratory and injunctive relief from the Protective Orders, the Court is barred from hearing such claims pursuant to the *Rooker-Feldman* doctrine.[113]

### 2. Plaintiff's Claims against Defendants for which he Seeks Damages are not Independent Claims beyond the Scope of *Rooker-Feldman*

In addition to seeking declaratory and injunctive relief, Plaintiff also seeks monetary damages. Accordingly, construing the Second Amended Complaint liberally, the Court will consider whether Plaintiff's claims constitute independent claims beyond the scope of *Rooker-Feldman*.

The Fifth Circuit in *Truong v. Bank of America, N.A.* cautioned that in light of the "narrow ground" *Rooker-Feldman* occupies, "it does not prohibit a plaintiff from 'present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'"[114] As discussed above, the Fifth Circuit explained that the two hallmarks of the *Rooker-Feldman* inquiry are: (1) "what the federal court is being asked to review and reject;" and (2) "the source of the federal plaintiff's alleged injury."[115]

However, in *Truong*, the Fifth Circuit also made a point to note that there is no "general rule that *any* claim that relies on a fraud allegation is an 'independent claim' for *Rooker-Feldman* purposes."[116] The Fifth Circuit cited a number of cases in which it had held that *Rooker-Feldman* barred claims that judgments were fraudulently procured because the relief requested would

---

[113] *See Exxon Mobil Corp.*, 544 U.S. at 284 (holding that application of the *Rooker-Feldman* doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

[114] *Truong*, 717 F.3d at 385 (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

[115] *Id.* at 382 (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

[116] *Id.* at 384 n.3.

necessarily include reversing a state court judgment.[117] *Truong* approvingly cited *Turner v. Chase*,[118] *Turner v. Cade*[119] and *Sookma v. Millard*,[120] all unpublished decisions in which the Fifth Circuit held that the *Rooker-Feldman* doctrine barred claims that state court divorce decrees were procured through fraud because the federal plaintiffs had sought to void the adverse state court judgments.[121] In fact, *Sookma* involved a similar claim that the plaintiff's state court opponents and state judges together deprived her of her civil rights.[122] There, the Fifth Circuit found that the *Rooker-Feldman* doctrine barred review because the plaintiff sought, in addition to damages, to enjoin the enforcement of a state divorce decree.[123] By contrast, in the Fifth Circuit cases cited in *Truong* for the proposition that a district court may have jurisdiction over "independent claims" that do not seek to merely overturn the state court judgment, the plaintiffs, unlike Plaintiff in the instant litigation, did not bring a direct attack on the judgment of a state court.[124]

Here, the Second Amended Complaint explicitly seeks declaratory and injunctive relief

---

[117] *Id.* (citing *Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011); *United States v. Shepherd*, 23 F.3d 923, 924–25 (5th Cir. 1994).

[118] 334 F. App'x 657, 659–60 (5th Cir. 2009).

[119] 354 F. App'x 108, 110–11 (5th Cir. 2009).

[120] 151 F. App'x 299, 300–01 (5th Cir. 2005).

[121] *See Truong*, 717 F.3d at 384 n.3.

[122] *Sookma*, 151 F. App'x at 300–01.

[123] *Id.*

[124] *See, e.g.*, *Drake v. St. Paul Travelers Ins. Co.*, 353 F. App'x 901, 905 (5th Cir. 2009) ("In his present complaint, [Plaintiff] is not inviting the district court to review and reject the judgment of the Texas state courts. Instead, [the plaintiff] is seeking damages for [a defendant's] allegedly fraudulent statements. Thus, *Rooker-Feldman* is inapplicable in this case."); *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) ("The *Rooker-Feldman* doctrine does not apply to this case because adjudicating [the plaintiff's] claims did not require the district court to review any final judgment rendered by a state court.").

from the state court judgments and damages.[125] Plaintiff alleges that the Boyds harmed him by: denying "his rights to assemble, speak, and demonstrate in public forum such as social medial platforms," depriving him an "opportunity to present evidence;" not allowing him "a reasonable opportunity to understand what conduct was criminal and what conduct was civil;" and "continu[ing] to phone law enforcement and utilize their influence to have Plaintiff [] arrested and criminally prosecuted without due process."[126] Thus, these claims for damages stem directly from the Boyds' seeking and enforcing the Protective Orders.

This Court has previously found that such claims are "inextricably intertwined" with an underlying judgment even where Plaintiff "alleges a range of claims against the defendants not raised in the original proceedings."[127] Likewise, Plaintiff's claims here implicate the underlying state court judgment, such that Plaintiff's claims ultimately constitute a collateral attack on the state court decree. Accordingly, the Court finds that all of Plaintiff's claims against the Boyds are barred by the *Rooker-Feldman* doctrine because they are 'inextricably intertwined' with the underlying Protective Orders. The Court could not rule in Plaintiff's favor without overturning the Protective Orders.[128] Therefore, the Court finds that, because Plaintiff seeks review and relief from final state court judgments, pursuant to the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction over Plaintiff's federal claims against the Boyds. Thus, Plaintiff's

---

[125] Rec. Doc. 50.

[126] *Id.* at 14, 16–18.

[127] *See Smith v. Woods*, No. CV 19-14779, 2020 WL 3606271, at *11 (E.D. La. July 2, 2020) (Brown, C.J.) (holding that the *Rooker-Feldman* doctrine applied where Plaintiff challenged a state divorce judgment in this Court and sought damages in addition to injunctive relief because "[t]he fact that Plaintiff seeks damages in addition to injunctive relief does not negate the fact that Plaintiff's claims ultimately constitute a collateral attack on the state court decree and that Plaintiff ultimately seeks to overturn or void a state court judgment"), *aff'd*, 853 F. App'x 980 (5th Cir. 2021).

[128] *Id.* (citing *Shepherd*, 23 F.3d at 924).

federal claims against the Boyds must be dismissed without prejudice. The Court also declines to exercise supplemental jurisdiction over any remaining state law claims that Plaintiff appears to allege.[129]

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that the Boyds' motion[130] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's federal claims against the Boyds in their official and individual capacities are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any remaining state law claims and any such claims are **DISMISSED WITHOUT PREJUDICE.**

**NEW ORLEANS, LOUISIANA**, this  19th  day of August, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[129] Even construing the complaint liberally, it is not clear that Plaintiff asserts state law claims. To the extent that he does assert state law claims, a court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Here, the Court elects to follow the "general rule [] to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992).

[130] Rec. Doc. 62.