**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KENNETH JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2703** |
| **CRAIG WEBRE, et al.** | **SECTION: "G"** |

<u>**ORDER AND REASONS**</u>

This litigation arises from an alleged controversy over the residence of Lafourche Parish School Board member and Defendant Richmond Boyd ("Boyd").[1] Plaintiff Kenneth Johnson ("Plaintiff") brings claims against Defendants Lafourche Parish District Attorney Kristine Russell ("Russell"), Lafourche Parish Sheriff Craig Webre ("Webre"), Lafourche Parish School Board member Richmond Boyd ("Boyd"), Boyd's wife and Lafourche Parish Librarian Kaina Boyd ("Mrs. Boyd"), Lafourche Parish Detective Nicholas Pepper ("Pepper"), Lafourche Parish Assistant District Attorney Allie Fournet ("Fournet"), and Judge Christopher Boudreaux of the Seventeenth Judicial District Court for the Parish of Lafourche ("Judge Boudreaux") (collectively, "Defendants").[2] Before the Court is Judge Boudreaux's "Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)."[3] Plaintiff has not filed an opposition to the motion, and therefore the instant motion is deemed to be unopposed. This Court has authority to grant a motion as unopposed, although it is not required to do so.[4] Considering the motion, the memorandum in

---

[1] *See* Rec. Doc. 50.

[2] *Id.*

[3] Rec. Doc. 64.

[4] *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 356 (5th Cir.1993).

1

support, the record, and the applicable law, the Court grants the motion and dismisses all of Plaintiff's federal claims against Judge Boudreaux without prejudice. The Court declines to exercise supplemental jurisdiction over any remaining state law claims.

## I. Background

### A.      Factual Background/State Court Proceedings

In the Second Amended Complaint, Plaintiff alleges that Boyd lives in Raceland, not in the district of Thibodaux where he is elected to the School Board.[5] Plaintiff further alleges that Boyd's "influence as an elected school board member and bail bondsman" allowed him to influence Defendants Webre, Pepper, Russell, Fournet, and Judge Boudreaux into "silencing" Plaintiff's free speech.[6] Specifically, Plaintiff alleges that Boyd and Mrs. Boyd obtained permanent protective orders (the "Protective Orders") in the Seventeenth Judicial District Court for the Parish of Lafourche, prohibiting Plaintiff from abusing, harassing, or stalking Boyd and Mrs. Boyd.[7] Plaintiff asserts that Boyd and Mrs. Boyd have had Plaintiff "arrested, incarcerated, or brought before a judge a total of twenty times" for violating the Protective Orders.[8] On April 18, 2018, Judge Boudreaux denied as untimely motions Plaintiff filed in state court to amend the Protective Orders and for a new trial.[9]

On May 31, 2019, Plaintiff filed a petition in the same state court for a temporary restraining order against Boyd, alleging that Boyd threatened Plaintiff and had him arrested for

---

[5] *Id.* at 1.

[6] *Id.*

[7] *Id.* at 9. *See also* Rec. Docs. 50-1, 50-3 at 21.

[8] Rec. Doc. 50 at 9.

[9] Rec. Doc. 50-10 at 18–19.

violating the Protective Orders where Plaintiff attended church service and did not know Boyd would also be attending.[10] Plaintiff alleges this petition was denied[11] and that his most recent arrests for violation of the Protective Orders occurred on March 17, 2020, and July 23, 2020.[12] On February 2, 2021, Plaintiff filed a motion to dissolve the Protective Orders in state court.[13] However, on February 5, 2021, during a hearing to determine whether Plaintiff was in contempt of court for violating the Protective Orders, Judge Boudreaux denied the motion to dissolve, concluding that it was actually an untimely appeal.[14]

Judge Boudreaux also found Plaintiff in contempt of court for violating the Protective Orders and entered a contempt judgment (the "Contempt Judgment") on February 22, 2021.[15] Plaintiff alleges that he "filed a timely Notice of Appeal [of the Contempt Judgment] and requested a 'Return Date' for the appeal, which was denied."[16] On March 2, 2021, Plaintiff petitioned for a writ of mandamus[17] and alleges that, "as of now, the order has not been signed by [Judge] Boudreaux and Plaintiff Johnson's time for appeal is set to expire."[18] On April 1, 2021, another judge in the Seventeenth Judicial District Court granted Plaintiff's motion to recuse Judge

---

[10] Rec. Doc. 50-4 at 1–5.

[11] Rec. Doc. 50 at 5.

[12] *Id.* at 10.

[13] Rec. Doc. 50-8 at 7.

[14] *See* Rec. Doc. 50-15 at 6 (determining that the motion was "nothing more than a rehash of the issues that were addressed in the original hearing on the protective order").

[15] Rec. Doc. 50-8 at 25–26.

[16] Rec. Doc. 50 at 11–12.

[17] Rec. Doc. 50-8 at 14–15.

[18] Rec. Doc. 50 at 12.

Boudreaux from future proceedings in the state court matter.[19]

## B.    *Procedural Background/Federal Court Proceedings*

On October 2, 2020, Plaintiff filed a Complaint in this Court.[20] On January 19, 2021, Plaintiff filed an Amended Complaint.[21] On April 2, 2021, Plaintiff filed a Second Amended Complaint against Defendants, seeking declaratory and injunctive relief and monetary damages.[22] Specifically regarding Judge Boudreaux, Plaintiff avers that, "[w]hile [Judge Boudreaux] may enjoy absolute immunity as district judge in his individual capacity only, [Plaintiff] is requesting a temporary and/or permanent injunction to prevent defendant [Judge] Boudreaux from enforcing the invalid, statutory and constitutionally defective protective order."[23]

Plaintiff asserts two claims against all Defendants. First, Plaintiff claims that Defendants violated Plaintiff's rights to freedom of speech, expression, and protest by "unlawfully arresting individuals engaged in free speech and protest."[24] Second, Plaintiff claims that Defendants violated Plaintiff's rights to freedom of speech and due process by enforcing "a contradictory and confusing protective order . . . that were unclear, gave plaintiff no opportunity to present evidence,

---

[19] Rec. Doc. 50-16 at 1.

[20] Rec. Doc. 2. The Complaint also named the State of Louisiana, the Lafourche Parish Sheriff's Office, and the Lafourche Parish School Board. These parties were not named in the subsequent pleadings.

[21] Rec. Doc. 31.

[22] Rec. Doc. 50 at 19–20.

[23] *Id*. at 8.

[24] *Id*. at 13–15. The Seconded Amended Complaint states that "Count I," which encompasses this claim, is "common to all Defendants." *Id*. at 13. The Court notes that Count I also states that "Defendants and their high-ranking policymaking officials have intentionally developed and implemented customs, practices, and/or policies according to which individuals are detained, harassed, threatened, dispersed, and charged for exercising their free speech." *Id*. at 14–15. The Court finds that this claim cannot reasonably be construed as one against Judge Boudreaux, who cannot be said to develop and implement customs, practices, and/or policies of the Lafourche Parish Sheriff's Department or District Attorney's Office as a judge.

and gave law enforcement instructions to arrest plaintiff solely on the word of [Boyd]."[25]

Plaintiff also brings two claims against Judge Boudreaux only. First, Plaintiff claims that Judge Boudreaux denied Plaintiff "access to the courts" by denying the temporary restraining order requested by Plaintiff against Boyd and refusing to issue a return date on Plaintiff's notice of appeal regarding the Contempt Judgment.[26] Second, Plaintiff claims that Judge Boudreaux gave Plaintiff an unfair trial by showing "bias and prejudice towards Plaintiff Johnson" and being "influenced by the status and position of [Boyd]."[27]

On May 7, 2021, Judge Boudreaux filed the instant motion to dismiss.[28] On May 28, 2021, Plaintiff filed an unopposed motion to stay because Plaintiff's counsel was suspended by the Louisiana Supreme Court.[29] This Court granted Plaintiff's motion and stayed the case to provide time for Plaintiff's counsel to be reinstated to the practice of law.[30]

On June 7, 2022, the Court conducted a status conference[31] and lifted the stay.[32] During the status conference, the Court informed the parties that the instant motion would be noticed for submission on July 13, 2022.[33] Plaintiff was told to "file any opposition in accordance with the

---

[25] *Id.* at 16.

[26] *Id.* at 12.

[27] *Id.* at 19.

[28] Rec. Doc. 64.

[29] Rec. Docs. 75, 75-1.

[30] Rec. Doc. 81.

[31] Rec. Doc. 103.

[32] Rec. Doc. 102.

[33] *Id*. at 1–2.

Local Rules."[34] Pursuant to Local Rule 7.5, any opposition to a motion must be filed eight days before the noticed submission date.[35] Therefore, Plaintiff's opposition to the instant motion was due on July 5, 2022. On July 15, 2022, the Court granted Plaintiff an extension until July 20, 2022, to file the opposition.[36] However, to date, no opposition has been filed.

## II. Parties' Arguments

### A.     Judge Boudreaux's Arguments in Support of the Motion to Dismiss

Judge Boudreaux makes four arguments as to why the Court should grant the instant motion to dismiss. First, Judge Boudreaux argues that Plaintiff's claims against Judge Boudreaux in his official capacity "should be dismissed…pursuant to the Eleventh Amendment.[37] Judge Boudreaux asserts that, under "the Eleventh Amendment to the United State Constitution, a state is immune from any lawsuit seeking monetary damages or equitable relief brought in federal courts by her own citizens."[38] Judge Boudreaux avers that "a claim against a state official in his or her official capacity for monetary relief is treated as a claim against the State and is therefore barred."[39] Therefore, Judge Boudreaux concludes that Plaintiff's claims against him in his official capacity as a state court judge for monetary damages are barred under the Eleventh Amendment.[40]

Second, Judge Boudreaux argues that the Court lacks jurisdiction to hear Plaintiff's claims

---

[34] *Id.* at 2.

[35] EDLA Local Rule 7.5.

[36] Rec. Doc. 111.

[37] Rec. Doc. 64-1 at 1.

[38] *Id.* at 3 (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

[39] *Id.* at 4 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

[40] *Id.* (citing *Price v. Irons*, No. CV 19-11451, 2020 WL 1638376, at *1 (E.D. La. Apr. 2, 2020), *aff'd*, 832 F. App'x 904 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 161 (2021) for the proposition that a suit against a Louisiana state court judge in his or her official capacity is a suit against a state official).

against him pursuant to the *Rooker-Feldman* doctrine.[41] Judge Boudreaux argues that, under the *Rooker-Feldman* doctrine, Plaintiff is barred from bringing his claims because he complains "of injuries caused by state-court judgments rendered before the district court proceedings commenced" and because his claims are "inextricably intertwined" with the state court judgments.[42] Judge Boudreaux asserts that Plaintiff seeks "relief directly pertaining to [] previously issued state court orders and judgments."[43] Judge Boudreaux argues that Plaintiff both seeks to enjoin Judge Boudreaux from enforcing the Protective Order and requests that this Court issue an order declaring that Plaintiff received an unfair trial prior to the Contempt Order.[44] Therefore, Judge Boudreaux concludes that Plaintiff's claims against him are barred because they are "inextricably intertwined" with the state court judgments.[45]

Third, Judge Boudreaux argues that the Contempt Judgment is not final, and the Court should abstain from hearing Plaintiff's claims pursuant to the *Younger* abstention doctrine.[46] Judge Boudreaux asserts that this Court should decline to exercise jurisdiction because: (1) Plaintiff invites the Court to interfere with an ongoing state judicial proceeding that still has appeals and a writ of mandamus pending; (2) the State of Louisiana has an important interest in resolving matters related to the Protective Orders and the Contempt Order; and (3) Plaintiff has

---

[41] *Id.* at 1.

[42] *Id.* at 4 (quoting *Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005*); D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[43] *Id.* at 5.

[44] *Id.*

[45] *See id.* at 5–6.

[46] *Id.* at 6.

received, and taken, the opportunity to challenge the actions at issue in state court.[47] Therefore, Judge Boudreaux concludes that the Court should abstain from hearing Plaintiff's claims to the extent that they are based on ongoing state proceedings.[48]

Fourth, Judge Boudreaux argues that Plaintiff's claims against him should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim against him.[49] Judge Boudreaux asserts that "he is entitled to absolute judicial immunity" from suit by Plaintiff because Plaintiff has not established any of the limited circumstances necessary to overcome judicial immunity set forth under *Mireles v. Waco*.[50] Judge Boudreaux avers that Plaintiff's allegations "rest[] on judicial acts taken by him as a judge in the [Seventeenth Judicial District Court for the Parish of Lafourche]."[51] Judge Boudreaux also argues that the state court had original jurisdiction over the litigation at issue.[52] Thus, Judge Boudreaux concludes that Plaintiff's claims against him in an individual capacity are barred by judicial immunity.[53]

Finally, Judge Boudreaux also argues that Plaintiff is not entitled to injunctive relief against Judge Boudreaux because such relief is improper under 42 U.S.C. § 1983 and because "federal courts have no authority to direct state courts or their judicial officers in the performance of their duties."[54] Therefore, Judge Boudreaux argues that all of Plaintiff's claims against him

---

[47] *Id.* at 6–7.

[48] *Id.* at 8.

[49] *Id.* at 1.

[50] *Id.* at 9 (citing *Mireles v. Waco*, 484 U.S. 219, 226–27 (1988)).

[51] *Id.*

[52] *Id.*

[53] *Id.* at 9–10.

[54] *Id.* at 10 (quoting *Johnson v. Bigelow*, 239 F. App'x 865 (5th Cir. 2007)).

should be dismissed.[55]

**B.**     ***Plaintiff's Arguments in Opposition to the Motion to Dismiss***

Plaintiff has not filed an opposition to the motion to dismiss.

### III. Legal Standards

**A.**     ***Legal Standard for a Rule 12(b)(1) Motion to Dismiss***

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."[56] It is a "first principle of jurisdiction" that a federal court must dismiss an action "whenever it appears that subject matter jurisdiction is lacking."[57] Accordingly, a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" it.[58] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[59] This practice "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[60] When opposing a 12(b)(1) motion, as at all other times, the party asserting jurisdiction bears the burden to prove that the Court has jurisdiction.[61]

---

[55] *Id.*

[56] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[57] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citations omitted).

[58] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citations omitted).

[59] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

[60] *In re FEMA Trailer*, 668 F.3d at 287.

[61] *Ramming*, 281 F.3d at 161.

## B.   *Legal Standard for a Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[62] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[63] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[64] "Factual allegations must be enough to raise a right to relief above the speculative level."[65] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[66]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[67] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[68] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[69] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by

---

[62] Fed. R. Civ. P. 12(b)(6).

[63] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[64] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[65] *Twombly*, 550 U.S. at 556.

[66] *Id.* at 570.

[67] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[68] *Iqbal*, 556 U.S. at 677–78.

[69] *Id.* at 679.

mere conclusory statements" will not suffice.[70]

The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[71] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[72] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[73] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[74]

## IV. Analysis

Judge Boudreaux first argues that this Court lacks subject matter jurisdiction over Plaintiff's claims because: (1) the Eleventh Amendment to the United State Constitution bars Plaintiff's claim for damages against Judge Boudreaux in his official capacity; (2) the *Rooker-Feldman* bars Plaintiff's claims to the extent they are based on the final orders and judgments of the Louisiana state court; and (3) the *Younger* abstention doctrine bars Plaintiff's claims to the extent they are based on ongoing state proceedings. Judge Boudreaux next argues that Plaintiff's claims should be dismissed for failure to state a claim for relief against him because: (1) Judge

---

[70] *Id.* at 678.

[71] *Id.*

[72] *Id.*

[73] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[74] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

Boudreaux is entitled to absolute judicial immunity as to any claims for damages against him in his individual capacity; and (2) injunctive relief against him is not available pursuant to 42 U.S.C. § 1983. As required by the Fifth Circuit, the Court addresses the jurisdictional issues first [75] and finds that it lacks subject matter jurisdiction over Plaintiff's claims against Judge Boudreaux in this matter.

**A.**     ***The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims for Damages against Judge Boudreaux in his Official Capacity under the Eleventh Amendment***

Judge Boudreaux argues that Plaintiff's claims against him in his official capacity for damages are barred by the Eleventh Amendment to the United States Constitution.[76] Because this argument is jurisdictional, the Court considers it under Rule 12(b)(1).[77] Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens."[78] "By statute, Louisiana has refused to consent to suits brought against it in federal court.[79] Furthermore, "[s]uits against state officials in their official capacity . . . should be treated as suits against the State."[80] "A suit against a Louisiana state court judge in his or her official capacity is a suit against a state official and barred by the Eleventh Amendment"[81] to the extent

---

[75] *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (citations omitted).

[76] Rec. Doc. 64-1 at 4.

[77] *See Jefferson v. La. State Supreme Court*, 46 Fed. App'x 732, 2002 WL 1973897, at *1 (5th Cir. 2002).

[78] *Edelman*, 415 U.S. at 663. This immunity extends to suits brought under state law. *See Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997).

[79] *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002) ("By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts.") (citing La. Rev. Stat. § 13:5106(A)).

[80] *Hafer*, 502 U.S. at 25.

[81] *Price*, 2020 WL 1638376, at *3, *5.

that Plaintiff seeks damages.[82] Therefore, Plaintiff's claims for damages against Judge Boudreaux, a Louisiana state court judge, in his official capacity must be dismissed without prejudice.

**B.      *Plaintiff's Claims Based on the Protective Orders Should be Dismissed Under the Rooker-Feldman Doctrine***

Judge Boudreaux argues that Plaintiff's claims should be dismissed pursuant to the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction to review or modify the final decisions of state courts unless there is a federal statute that specifically permits such a review.[83] In *Rooker v. Fidelity Trust Co.*, the plaintiff filed suit in federal district court, claiming that the state court, in a case in which the plaintiff was a party, had given effect to a state statute alleged to be in conflict with the contract clause of the Constitution and the due process and equal protection clauses of the Fourteenth Amendment.[84] The Supreme Court held that "[i]f the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction."[85] The Supreme Court explained that the district court lacked jurisdiction because "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment for errors of that character."[86]

In *District of Columbia Court of Appeals v. Feldman*, two plaintiffs brought suit in federal

---

[82] *Id.* at *6 ("With regard to plaintiff's claims against the judge in his official capacity, for instance, Eleventh Amendment immunity does not apply, under the '*Ex Parte Young* exception,' when 'the relief sought . . . [is] declaratory or injunctive in nature and prospective in effect.'") (quoting *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)).

[83] *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004).

[84] *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414–15 (1923).

[85] *Id.* at 415.

[86] *Id.* at 416.

court challenging the District of Columbia Court of Appeals' refusal to waive a court rule requiring District of Columbia bar applicants to have graduated from an accredited law school.[87] The Supreme Court held that the proceedings before the District of Columbia Court of Appeals were judicial in nature and the district court lacked subject matter jurisdiction over their claims.[88] The Supreme Court found that district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional."[89]

The Supreme Court has cautioned that the *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[90] "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."[91]

In *Truong v. Bank of America, N.A.*, the Fifth Circuit explained that the two hallmarks of the *Rooker-Feldman* inquiry are: (1) "what the federal court is being asked to review and reject;" and (2) "the source of the federal plaintiff's alleged injury."[92] Recently, in *Miller v. Dunn*, the

---

[87] 460 U.S. 462, 464–65 (1983).

[88] *Id.* at 482.

[89] *Id.* at 486.

[90] *Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005*)*

[91] *Id.*

[92] 717 F.3d at 382 (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

Fifth Circuit clarified that "*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed."[93]

In the Second Amended Complaint, Plaintiff brings federal and state law claims against Defendants and seeks declaratory and injunctive relief and damages from the Protective Orders.[94] Specifically, Plaintiff asks this Court to enjoin Defendants from enforcing the Protective Orders and to declare that the Protective Orders are too restrictive on Plaintiff's rights to free speech, overly vague, and constitutionally infirm.[95] Finally, Plaintiff asks the Court to award Plaintiff damages "according to proof."[96]

As a threshold matter, the *Rooker-Feldman* doctrine only applies to claims based on state court judgments rendered before the district court proceedings commenced.[97] The Protective Orders were issued on February 6, 2018, and Plaintiff filed this lawsuit on October 2, 2020.[98] Therefore, undoubtedly, Plaintiff's claims based on the Protective Orders are claims against state court judgments rendered before the district court proceedings commenced.

Thus, since Plaintiffs claims against Defendants refer to state-court judgments rendered before the instant federal proceeding commenced, the Court must conduct an analysis as to whether the *Rooker-Feldman* doctrine bars those claims. First, the Court will consider whether *Rooker-Feldman* bars consideration of Plaintiff's claims against Defendants to the extent that he

---

[93] 35 F.4th 1007, 112 (5th Cir. 2022).

[94] *See* Rec. Doc. 50 at 19–20.

[95] *Id.* at 20.

[96] *Id.* at 20.

[97] *Exxon Mobil Corp.*, 544 U.S. at 284.

[98] Rec. Doc. 2.

15

explicitly seeks declaratory and injunctive relief from a state court judgment. Then, the Court will consider whether, construing Plaintiff's Complaint liberally, those claims, for which he also seeks damages, constitute independent claims beyond the scope of *Rooker-Feldman*.

> **1.     The Court is Barred from Considering Plaintiff's Claims against Defendants for which he Claims Injunctive Relief and Damages Pursuant to the *Rooker-Feldman* Doctrine**

"The Supreme Court has definitively established, in what has become known as the *Rooker-Feldman* doctrine, that federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify *final* orders of state courts."[99] If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court."[100]

In the Second Amended Complaint, Plaintiff appears to seek declaratory and injunctive relief from the Protective Orders. The Protective Orders, as permanent injunctions, are undoubtedly final judgments under Louisiana law. Under Louisiana law, "[a] permanent injunction is a final judgment which extends the life of the proceeding in which it was granted until it is either modified or revoked by the district court which issued it."[101] The finality of the Protective Orders is further evidenced by both the fact that the state court held Plaintiff in contempt for violating those orders and that Judge Boudreaux denied Plaintiff's motion to dissolve the Protective Orders as an untimely appeal.[102] Plaintiff does not suggest that an appeal

---

[99] *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (emphasis added) (internal quotation marks and citation omitted).

[100] *Id.*

[101] *S. Cent. Bell Tel. Co. v. Dempster*, 303 So. 2d 278, 279 (La. Ct. App. 1973).

[102] Rec. Doc. 50-8 at 25–26; Rec. Doc. 50-15 at 6.

of the Protective Orders is pending. Thus, to the extent that Plaintiff seeks declaratory and injunctive relief from the Protective Orders, the Court is barred from hearing such claims pursuant to the *Rooker-Feldman* doctrine.[103]

### 2. Plaintiff's Claims against Defendants for which he Seeks Damages are not Independent Claims beyond the Scope of *Rooker-Feldman*

In addition to seeking declaratory and injunctive relief, Plaintiff also seeks monetary damages. Accordingly, construing the Second Amended Complaint liberally, the Court will consider whether Plaintiff's claims constitute independent claims beyond the scope of *Rooker-Feldman*.

The Fifth Circuit in *Truong v. Bank of America, N.A.* cautioned that in light of the "narrow ground" *Rooker-Feldman* occupies, "it does not prohibit a plaintiff from 'present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'"[104] As discussed above, the Fifth Circuit explained that the two hallmarks of the *Rooker-Feldman* inquiry are: (1) "what the federal court is being asked to review and reject;" and (2) "the source of the federal plaintiff's alleged injury."[105]

However, in *Truong*, the Fifth Circuit also made a point to note that there is no "general rule that *any* claim that relies on a fraud allegation is an 'independent claim' for *Rooker-Feldman* purposes."[106] The Fifth Circuit cited a number of cases in which it had held that *Rooker-Feldman*

---

[103] *See Exxon Mobil Corp.*, 544 U.S. at 284 (holding that application of the *Rooker-Feldman* doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

[104] *Truong*, 717 F.3d at 385 (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

[105] *Id.* at 382 (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

[106] *Id.* at 384 n.3.

barred claims that judgments were fraudulently procured because the relief requested would necessarily include reversing a state court judgment.[107] *Truong* approvingly cited *Turner v. Chase*,[108] *Turner v. Cade*[109] and *Sookma v. Millard*,[110] all unpublished decisions in which the Fifth Circuit held that the *Rooker-Feldman* doctrine barred claims that state court divorce decrees were procured through fraud because the federal plaintiffs had sought to void the adverse state court judgments.[111] In fact, *Sookma* involved a similar claim that the plaintiff's state court opponents and state judges together deprived her of her civil rights.[112] There, the Fifth Circuit found that the *Rooker-Feldman* doctrine barred review because the plaintiff sought, in addition to damages, to enjoin the enforcement of a state divorce decree.[113] By contrast, in the Fifth Circuit cases cited in *Truong* for the proposition that a district court may have jurisdiction over "independent claims" that do not seek to merely overturn the state court judgment, the plaintiffs, unlike Plaintiff in the instant litigation, did not bring a direct attack on the judgment of a state court.[114]

---

[107] *Id.* (citing *Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011); *United States v. Shepherd*, 23 F.3d 923, 924–25 (5th Cir. 1994).

[108] 334 F. App'x 657, 659–60 (5th Cir. 2009).

[109] 354 F. App'x 108, 110–11 (5th Cir. 2009).

[110] 151 F. App'x 299, 300–01 (5th Cir. 2005).

[111] *See Truong*, 717 F.3d at 384 n.3.

[112] *Sookma*, 151 F. App'x at 300–01.

[113] *Id.*

[114] *See, e.g.*, *Drake v. St. Paul Travelers Ins. Co.*, 353 F. App'x 901, 905 (5th Cir. 2009) ("In his present complaint, [Plaintiff] is not inviting the district court to review and reject the judgment of the Texas state courts. Instead, [the plaintiff] is seeking damages for [a defendant's] allegedly fraudulent statements. Thus, *Rooker-Feldman* is inapplicable in this case."); *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) ("The *Rooker-Feldman* doctrine does not apply to this case because adjudicating [the plaintiff's] claims did not require the district court to review any final judgment rendered by a state court.").

Here, the Second Amended Complaint explicitly seeks declaratory and injunctive relief from the state court judgments and damages.[115] Plaintiff alleges that all Defendants harmed him by denying "his rights to assemble, speak, and demonstrate in public forum such as social medial platforms," depriving him an "opportunity to present evidence," and not allowing him "a reasonable opportunity to understand what conduct was criminal and what conduct was civil."[116] Thus, these claims for damages stem directly from Defendants' enforcement of the Protective Orders.

This Court has previously found that such claims are "inextricably intertwined" with an underlying judgment even where Plaintiff "alleges a range of claims against the defendants not raised in the original proceedings."[117] Likewise, Plaintiff's claims here implicate the underlying state court judgment, such that Plaintiff's claims ultimately constitute a collateral attack on the state court decree. Accordingly, the Court finds that all of Plaintiff's claims against Judge Boudreaux related to the Protective Orders are barred by the *Rooker-Feldman* doctrine because they are 'inextricably intertwined' with the underlying Protective Orders. The Court could not rule in Plaintiff's favor without overturning the Protective Orders.[118] Therefore, the Court finds that, because Plaintiff seeks review and relief from final state court judgments, pursuant to the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction over Plaintiff's claims

---

[115] Rec. Doc. 50.

[116] *Id.* at 14, 16–17.

[117] *See Smith v. Woods*, No. CV 19-14779, 2020 WL 3606271, at *11 (E.D. La. July 2, 2020) (Brown, C.J.) (holding that the *Rooker-Feldman* doctrine applied where Plaintiff challenged a state divorce judgment in this Court and sought damages in addition to injunctive relief because "[t]he fact that Plaintiff seeks damages in addition to injunctive relief does not negate the fact that Plaintiff's claims ultimately constitute a collateral attack on the state court decree and that Plaintiff ultimately seeks to overturn or void a state court judgment"), *aff'd*, 853 F. App'x 980 (5th Cir. 2021).

[118] *Id.* (citing *Shepherd*, 23 F.3d at 924).

against Judge Boudreaux that relate to the Protective Orders.  Thus, Plaintiff's claims against Judge Boudreaux that relate to the Protective Orders must be dismissed without prejudice.

**C.     *Whether Plaintiff's Claims Regarding the Contempt Judgment Should be Dismissed Pursuant to the Younger Abstention Doctrine***

Next, Judge Boudreaux argues that the Contempt Judgment is not final, and the Court should abstain from hearing Plaintiff's claims pursuant to the *Younger* Abstention Doctrine.[119] The Fifth Circuit has held that, "[i]n general, the *Younger* doctrine requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges."[120] The Fifth Circuit has also held that "[i]n order to decide whether the federal proceeding would interfere with the state proceeding, [a court] look[s] to the relief requested and the effect it would have on the state proceedings."[121] Finally, the Fifth Circuit has also found that "[i]nterference is established whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."[122]

Here, in his claims against only Judge Boudreaux, Plaintiff alleges that he "has been and continues to be denied access to the courts…by [Judge] Boudreaux when [Judge] Boudreaux denied a temporary restraining order requested by Plaintiff" and when Judge Boudreaux "refused

---

[119] Rec. Doc. 64-1 at 6.

[120] *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (internal quotation marks omitted).

[121] *Id*. at 717 (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003)).

[122] *Id*. (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) (internal quotation marks omitted)).

to issue a 'Return Date' on a Notice of Appeal filed by [Plaintiff's] counsel."[123] Additionally, Plaintiff claims that Judge Boudreaux gave Plaintiff an unfair trial by "show[ing] bias and prejudice towards [Plaintiff]."[124]

The three conditions for application of the *Younger* abstention doctrine to Plaintiff's claims against Judge Boudreaux are met. First, Plaintiff specifically alleges in the Second Amended Complaint that he has filed a notice of appeal and has a writ of mandamus pending that relates to the Contempt Judgment.[125] Thus, these claims are based on a Contempt Judgment that is still the subject of ongoing judicial proceedings.

Second, the United States Supreme Court has specifically held that federal courts should not interfere with contempt proceedings because they are "uniquely in furtherance of the state courts' ability to perform their judicial functions."[126]

Third, there is no reason to think that Plaintiff has not had an adequate opportunity to raise constitutional challenges in state court. Plaintiff is already seeking an appeal and has successfully sought Judge Boudreaux's recusal in the matter. Therefore, the claims against Judge Boudreaux that relate to the Contempt Judgment must be dismissed without prejudice pursuant to the *Younger* abstention doctrine.[127]

---

[123] Rec. Doc. 50 at 18.

[124] *Id*. at 19,

[125] *Id.* at 11–12.

[126] *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989) (citing *Juidice v. Vail*, 430 U.S. 327, 336, n. 12 (1977)).

[127] If the Contempt Judgment is not the subject of ongoing state proceedings, but rather a final judgment, such that the *Younger* abstention doctrine does not apply, the Court notes that it would dismiss Plaintiff's "unfair trial" claim against Judge Boudreaux pursuant to the *Rooker-Feldman* doctrine because the Court would not be able to grant Plaintiff relief on this claim without overturning a final state court judgment. The Court also notes that it would dismiss Plaintiff's "access to the courts" claim against Judge Boudreaux pursuant to the Eleventh Amendment and absolute judicial immunity. Plaintiff has already successfully obtained Boudreaux's recusal from the state court matter, neither injunctive nor declaratory relief would be appropriate. Furthermore, Plaintiff's official capacity claim

## V. Conclusion

The Court lacks subject matter jurisdiction over Plaintiff's federal claims against Judge Boudreaux. Thus, Plaintiff's federal claims against the Boyds must be dismissed without prejudice. The Court also declines to exercise supplemental jurisdiction over any remaining state law claims that Plaintiff appears to allege.[128] Accordingly,

**IT IS HEREBY ORDERED** that Defendant Christopher Boudreaux's "Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)"[129] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Christopher Boudreaux in his official and individual capacities are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any remaining state law claims and any such claims are **DISMISSED WITHOUT PREJUDICE.**

**NEW ORLEANS, LOUISIANA**, this ___19th___ day of August, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

for damages against Judge Boudreaux would be barred by the Eleventh Amendment to the United States Constitution, and Judge Boudreaux would be entitled to absolute judicial immunity in his individual capacity.

[128] Even construing the complaint liberally, it is not clear that Plaintiff asserts state law claims. To the extent that he does assert state law claims, a court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Here, the Court elects to follow the "general rule [] to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 585 (5th Cir. 1992).

[129] Rec. Doc. 64.